IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:17-CV-00115-FL

| | | |
|---|---|---|
| TMS NC, INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) ) | ORDER |
| TOTAL MERCHANT SERVICES, LLC,[1] | ) ) ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE 9). Plaintiff filed response in opposition and defendant replied. In this posture, the issues raised are ripe for ruling. For reasons stated herein, defendant's motion is granted.

**BACKGROUND**

Plaintiff initiated this action on August 17, 2017, asserting North Carolina state law claims for breach of contract and negligence against defendant Total Merchant Services, Inc. ("Total"). Specifically, plaintiff asserts against defendant three claims for breach of contract (Counts I through III) and two claims of negligence (Count IV and Count V). Plaintiff invoked this court's jurisdiction pursuant to 28 U.S.C. § 1332, alleging diversity between the parties and an amount in controversy in excess of $75,000.00. Plaintiff seeks an accounting, compensatory damages, and attorney's fees

---

[1] The court constructively amends the case caption to correct misnomer in defendant's corporate name. (See DE 10, p. 1).

and costs.

Defendant filed the instant motion to dismiss in lieu of answer on October 19, 2017. Therein, defendant asserts that plaintiff's complaint should be dismissed for failure to state a claim upon which relief can be granted. (DE 9, p. 1). On November 9, 2017, plaintiff filed response in opposition to defendant's motion to dismiss. In support thereof, plaintiff relies on a Sales Representation Agreement between Total and TMS NC, Inc. f/k/a M&C Business Consulting, Inc., dated February 20, 2008, and a letter dated July 14, 2017, from David A. Greenberg, counsel for Total, to Eric A. Linden, counsel for plaintiff. (See DE 18-3 and DE 18-4). On November 22, 2017, defendant filed reply to plaintiff's response in opposition.

## STATEMENT OF FACTS

The facts alleged in the complaint may be summarized as follows. Plaintiff is a North Carolina corporation, with its principal place of business located within the state. (DE 1, ¶ 4). Defendant is a limited liability company incorporated in Nevada with its principal place of business located in Colorado. (Id. ¶ 5). Defendant is in the business of providing merchants with credit card processing products and services. (Id. ¶ 11).

On February 20, 2008, plaintiff entered into an agreement with defendant entitled "Sales Representation Agreement" (the "agreement"). (See DE 1-3). As relevant here, the agreement requires defendant to compensate plaintiff for plaintiff's marketing and sales of defendant's products and services. (DE 1, ¶ 13). Under the terms of the agreement, plaintiff is entitled to 65% of any annual PCI compliance fees, compliance program fees, and FANF fees, paid to defendant by merchants solicited by plaintiff. (Id. ¶ 17). According to plaintiff, defendant "only paid [it] 20% of the annual fees, none of the FANF fees, and 25 cents of the compliance program fees." (Id. ¶

2

23).

On June 9, 2017, and August 14, 2017, plaintiff sent defendant written notice of its failure to pay plaintiff in accordance with the terms of the agreement. (Id. ¶ 24). Under the terms of the agreement, an event of default occurred when defendant's failure to pay continued for 15 business days following plaintiff's written notices. (Id. ¶ 24). As a result of defendant's default, plaintiff is entitled to an accounting "of each and every annual fee, FANF fee, and program compliance fee assessed to [plaintiff's] merchants from 2009 to date, . . . and payment from defendant of the difference between [the amount plaintiff] was paid and [the amount] it is owned under the [a]greement." (Id. ¶ 25).

Separate and distinct from defendant's failure to compensate, in or around December 2014, all Hypercom U.S.A., Inc., T4100 ("Hypercom T4100") credit card proceeding units plaintiff supplied its merchants "stopped functioning en masse." (Id. ¶ 27). Pursuant to the agreement, defendant required plaintiff to provide each of its merchants with a Hypercom T4100. At the time the Hypercom T4100 units malfunctioned, defendant "failed to replace the merchants' units on a timely basis, failed to have sufficient customer service personnel to address merchant concerns, made repeated broken promises to merchants about replacement equipment and failed to account for missing merchant transactions." (Id. ¶ 29). As a result of these failures plaintiff allegedly sustained damages exceeding $450,000.00 per year. (Id. ¶ 31).

Also in contravention of the agreement, in or around October 2015, defendant provided plaintiff's merchant, Tomlinson Sales Company ("Tomlinson"), with information which allowed Tomlinson access to confidential information about plaintiff's merchant accounts. In response to defendant's failure to "protect [plaintiff's] most sensitive confidential information," Tomlinson

terminated its merchant agreement with plaintiff. (Id. ¶ 34).

Plaintiff claims entitlement to all losses and damages defendant has caused due to these three asserted violations of the agreement.

## DISCUSSION

A.  Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). If additional materials "outside the pleading[s] are presented to and not excluded by the court, the motion [to dismiss] shall be treated as one for summary judgment . . . and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56." Fed. R. Civ. P. 12(b); see Gay v. Wall, 761 F.2d 175, 178 (4th Cir. 1985).

B.  Analysis

  1.  Breach of Contract (Counts I, II, and III)

Plaintiff asserts that defendant breached the terms of the agreement by 1) failing to compensate plaintiff properly pursuant to the terms of the agreement; 2) failing to properly remedy

damages resulting from malfunctioning Hypercom T4100 units and; 3) disclosing confidential information to Tomlinson. For the reasons stated below, none of these asserted actions constitute a breach of the agreement.

As a preliminary matter, this court must determine what law applies to the instant contractual disputes. "Federal courts sitting in diversity apply the substantive state law that would apply had the plaintiff filed the case in state court." Hickerson v. Yamaha Motor Corp., 882 F.3d 476, 480 (4th Cir. 2018). Where the contract at issue in this matter contains a choice of law provision selecting Colorado law, this court will apply North Carolina choice of law rules. See Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941) (holding a federal district court must apply the choice of law rules of the state in which the court sits).

In North Carolina, "contracting parties . . . are entitled to agree that a particular jurisdiction's substantive law will govern their contract, and such a provision will generally be given effect." Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 602 (4th Cir. 2004) (citing Torres v. McClain, 140 N.C. App. 238, 240–41 (N.C. Ct. App. 2000) (holding that parties' choice of law is generally binding)); see also Tanglewood Land Co., Inc. v. Byrd, 299 N.C. 260, 262 (1980) (holding choice of law clause enforceable in action for breach of contract). The parties' choice will be denied only where "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice," or "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue." Id. (citing Restatement (Second) of Conflict of Laws, § 187). Colorado courts apply a similar rule. See AE, Inc., v. Goodyear Tire & Ribber Co., 168 P.3d 507, 509–10 (2007).

5

Here, it is undisputed that the agreement includes a choice of law provision that selects Colorado law. (See DE 1-3, p. 8). Moreover, it is undisputed that defendant has its principal place of business in Colorado. Finally, application of Colorado law is contrary to no fundamental policy of North Carolina. See Volvo, 386 F.3d at 602. Indeed, plaintiff has identified no difference in the laws or policies of North Carolina and Colorado upon which the court might rest any contrary conclusion. Accordingly, under choice of law principles applicable to both sides' claims, the choice of law provision in issue here is enforceable, and the substantive law of Colorado governs defendant's breach of contract claims. See Volvo, 386 F.3d at 602.

In Colorado, a plaintiff asserting a claim for breach of contract must prove the following elements: 1) "the existence of a contract; 2) "performance by the plaintiff or some justification for nonperformance;" 3) "failure to perform the contract by the defendant;" and 4) damages. W. Distrib. Co. v. Diodosio, 841 P.2d 1053, 1058 (1992) (internal citations omitted). "[T]o establish the existence of a contract, the parties must agree upon all essential terms." Fed. Lumber Co. v. Wheeler, 643 P.2d 31, 36 (1981) (internal citations omitted). In addition, "performance" requires substantial performance. "Substantial performance occurs when, although the conditions of the contract have been deviated from in trifling particulars not materially detracting from the benefit the other party would derive from a literal performance, the defendant has received substantially the benefit expected, and is, therefore, bound to pay." W. Distrib. Co. 841 P.2d at 1058. In Colorado, contracts must be "enforced according to their express terms." Mandelbaum v. Fiserv, Inc., 787 F. Supp. 2d 1226, 1242 (D. Colo. 2011).

Plaintiff asserts three breach of contract claims against defendant, all based upon separate and distinct actions and failures by defendant. The court addresses each claim in turn.

6

a.          Count I – Breach of Contract (Failure to Compensate)

Plaintiff's first claim for breach of contract is based upon defendant's alleged failure to compensate plaintiff in accordance with the terms of the agreement. The agreement sets forth the terms of plaintiff's compensation for its performance under the contract. Section 3 of the agreement provides that plaintiff "shall receive compensation in the amounts and at the times described in Exhibit A." (DE 1-3 § 3).

Exhibit A to the agreement provides two compensation options, the "Buy Rate Program" and the "Revenue Sharing Program." (DE 1-3, Ex. A, p. 9). Where plaintiff alleges entitlement to certain bonuses only provided for in the "Revenue Sharing Program," plaintiff's entitlement to compensation is governed by the terms of that option. The Revenue Sharing Program requires defendant to pay plaintiff "50% of the difference between the rates and fees charged to each [m]erchant and the rates and fees that defendant pays to [certain] [a]ssociations and vendors in respect of such [m]erchant." (Id.). Plaintiff's "monthly compensation [is] . . . calculated by taking the difference between the rate and fees charged to the [m]erchant and the rate and fees paid by [defendant]." (Id.). In addition these amounts, plaintiff is also eligible for certain bonuses, depending on the number of retail merchants it activates. (Id.).

Every available revenue stream to which plaintiff is entitled to share under the Revenue Sharing Program is listed in Exhibit B to the contract. The revenue streams listed in Exhibit B are as follows:

| OPTION #2 - REVENUE SHARING PROGRAM | |
|---|---|
| You receive 50% to 65% of the difference between the rates and fees charged to the merchant and the rates and fees paid by AmeriBanc National, LLC to its vendors and associations. By choosing this option, you will share income on every available revenue stream. | |
| **INTERCHANGE AND ASSESSMENTS PLUS NOTHING** | |
| **AUTHORIZATION FEES** | |
| Global Payments (East & Central formerly MAPP) | $0.08 |
| Visanet | $0.08 |
| Non-Bankcard | $0.06 |
| IP based processing over 25,000 per month | $0.025* (plus 1 basis point) |
| **OTHER REVENUE SHARING PROGRAM FEES** | |
| Statement Fee/Customer Service Fee | $5/month |
| Debit Cards | $0.10 (+ network acquirer fees) |
| Chargebacks | $12.50 (per chargeback) |
| Retrieval Fee | $2.50 (per Retrieval request) |
| Voice Authorization Fee | $0.50 (per item) |
| Batch Deposit Fee | $0.035 (per item) |
| Free Wireless Placement Statement Fee/Customer Service Fee | $10/month |
| GPRS Wireless Activation Fee | FREE |
| GPRS Wireless Service Fees Using Nurit 8000 | $15/month (plus $0.05 per item) |
| Amex Enrollment Bonus | $50 (per activated account) |
| Annual Fee (optional, only applies if you charge one) | $5.00 |
| Visa/MC Credit Card IC Per Item Fee Pass Thru | $0.10 |
| Visa/MC Debit Card IC Per Item Fee Pass Thru | $0.15 |
| **INTERNET PAYMENT GATEWAYS (IF APPLICABLE)** | |
| Authorize.net | $10/month (plus $0.05 per item over 250 items) |
| Authorize.net – Retail Swipe | $10/month (plus $0.01 per item) |
| Plug N Pay | $10/month |
| VeriSign Payflow Link | $15/month |
| VeriSign Payflow Pro | $25/month |
| **INTERNET GATEWAYS SETUP/LICENSE FEES** | |
| Authorize.net | FREE |
| Plug N Pay | FREE |
| VeriSign Payflow Link & Payflow Pro | $99 |
| **APPLICATIONS FEES** | |
| Application Fees | FREE |
| * Rate effective as of October 15th 2007 | |

Here, plaintiff claims that defendant breached the agreement, in part, by failing to pay plaintiff the requisite 65% of the amounts received for annual PCI compliance fees, FANF fees, and program compliance fees. (DE 1, ¶¶ 11-39). Notably, the annual PCI compliance fee, compliance program fee, and the FNAF fee are not included among the fees listed in Exhibit B. Where, the terms of the agreement do not provide for payment of these fees, plaintiff fails to establish that defendant failed to perform a contractual obligation. See W. Distrib. Co., 841 P.2d at 1058 (indicating that success on breach of contract claim requires plaintiff to establish that defendant failed to perform the contract).

Plaintiff contends that where Exhibit B provides that it is "entitled to share income on every

8

available revenue stream," defendant was required to compensate plaintiff 65% of all annual PCI compliance fees, compliance program fees, and FANF fees, paid by plaintiff's merchants to defendant. However, the express terms of the agreement do not lend to this conclusion. Exhibit A to the agreement specifically provides that defendant shall pay a certain percentage of "the difference between the <u>rates and fees charged to each [m]erchant and the rates and fees that [defendant] pays to [a]ssociations and vendors in respect of such [m]erchant, as described in Exhibit B</u>." (DE 1-3, Ex. A, p. 9) (emphasis added). The annual PCI compliance fees, compliance program fees, and FANF fees are not described in Exhibit B as rates and fees charged to each merchant or as rates and fees paid by defendant to associations and vendors in respect to any merchant. Accordingly, Count I fails to state a claim and must be dismissed.

        b.        Count II– Breach of Contract (Failure to Rectify Hypercom Unit Malfunctions)

Plaintiff's second claim for breach of contract is based upon certain actions defendant allegedly failed to take in response to malfunctioning Hypercom T4100 units. Specifically, plaintiff contends that defendant "breached the [a]greement . . . by failing to replace malfunctioning Hypercom T4100 units on a timely basis, failing to have sufficient customer service personnel to address merchant concerns, making repeated broken promises to merchants about replacement equipment and failing to account for missing merchant transactions." (DE 1, ¶ 44).

Contrary to plaintiff's suggestion, the express terms of the agreement do not impose upon defendant any obligation regarding the maintenance service of Hypercom T4100 units. Accordingly, Count II must be dismissed for failure to state a claim.

c. Count III – Breach of Contract (Disclosure of Confidential Information to Tomlinson)

Plaintiff's third claim for breach of contract is based upon defendant's disclosure of certain confidential information to plaintiff's merchant, Tomlinson. Plaintiff argues that it suffered damages when defendant "provided [plaintiff's] online log-in information to Tomlinson's principal, thereby affording access to, and confidential information about, every one of [plaintiff's] thousands of merchant accounts." (DE, p. 7). With respect to Count III, plaintiff seeks damages, "as measured by [plaintiff's] lost revenues concomitant to [plaintiff's] loss of Tomlinson as a merchant customer." (DE 1, ¶ 52).

With respect to Count III, even if defendant breached the agreement by disclosing confidential information regarding plaintiff's merchant accounts, the damages plaintiff seeks for violation of the same are not recoverable under the agreement. The agreement expressly provides that neither party will be liable to the other for "incidental, consequential, special or punitive damages or loss of profits." (DE 1-3 §5(d)). Where plaintiff seeks only to recover lost profits for Count III, such claim must be dismissed. See Pernick v. Computershare Tr. Co., 136 F. Supp. 3d 1247, 1267 (D. Colo. 2015) (dismissing Colorado breach of contract claim where the contract at issue contained a provision limiting recovery for the damages sought).

2. Negligence (Counts IV and V)

With respect to plaintiff's negligence claims, where the alleged injuries suffered by plaintiff occurred in North Carolina, this court applies North Carolina law. See Boudreau v. Baughman, 322 N.C. 331, (1988) (explaining that North Carolina conflict of laws rules require courts to apply the law of the state where tort injury occurs).

Where a cause of action presumes the "existence of an agreement, the terms contained in an

agreement, and the interpretation of an agreement," the issues raised must be relegated to the arena of contract law, and are not appropriate for resolution under tort principles. Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998). Under North Carolina law, the court must "limit plaintiffs' tort claims to only those claims which are 'identifiable' and distinct from the primary breach of contract claim." Id. at 346 (quoting Newton v. Standard Fire Ins. Co., 291 N.C. 105, 111 (1976)). Furthermore, it is "unlikely that an independent tort could arise in the course of contractual performance, since those sorts of claims are most appropriately addressed by asking simply whether a party adequately fulfilled its contractual obligations." Strum v. Exxon Co., U.S.A., 15 F.3d 327, 333 (4th Cir. 1994); see N. Carolina State Ports Auth. v. Lloyd A. Fry Roofing Co., 294 N.C. 73, 83 (1978) ("[O]ur research has brought to our attention no case in which this Court has held a tort action lies against a promisor for his simple failure to perform his contract, even though such failure was due to negligence or lack of skill.").

Here, plaintiffs' claims of negligence are based upon defendants' alleged violations of the agreement. Count IV and Count V are both premised upon the terms of the agreement and interpretation of those terms. Therefore, whether or not the agreement 1) permitted defendant to disclose certain information to Tomlinson; and/or 2) obligated defendant to rectify Hypercom Unit malfunctions are both matters of contract interpretation, which must be "relegat[ed] . . . to the arena of contract law." Broussard, 155 F.3d at 347. Plaintiff's negligence claims constitute an attempt to cast as torts alleged breaches of the agreement. Where North Carolina law does not permit plaintiff to recharacterize claims in this manner, plaintiff's negligence claims must be dismissed as a matter of law. See id.

**CONCLUSION**

Based on the foregoing, the court, the court GRANTS defendant's motion to dismiss. (DE 9). Plaintiff's claims are DISMISSED for failure to state a claim. The clerk is DIRECTED to close this case.

SO ORDERED, this the 16th day of August, 2018.

_____
LOUISE W. FLANAGAN
United States District Judge